UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **WENDY BARR DYE** | * | **CIVIL ACTION NO. 18-0981** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **IASIS GLENWOOD REGIONAL MEDICAL CENTER LP** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss pursuant to Rule 12(b)(6), filed by Defendant IASIS Glenwood Regional Medical Center LP ("Glenwood") [doc. # 9]. For reasons set forth below, it is recommended that the motion be **GRANTED IN PART** and **DENIED IN PART**.

### Background

On May 14, 2018, Plaintiff Wendy Barr Dye filed a Petition for Damages in the 4th Judicial District Court, Parish of Ouachita, State of Louisiana, against Glenwood, asserting claims for discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for defamation under La. Civ. Code art. 2315. (*See* Petition, [doc. # 1-1]). Glenwood removed this action to federal court on July 30, 2018. (*See* Notice of Removal, [doc. # 1]).

According to the Petition, Dye is a registered nurse, formerly employed by Glenwood. On October 17, 2016, she was injured in a horse riding accident. As a result of the accident, Dye was diagnosed with severe migraine headaches and was prescribed the medications Fioricet and

1

Tramadol, to take as needed. Due to their side effects, Dye did not take the medications while on duty as a nurse. Dye's physician certified her to practice nursing after the accident. (Petition ¶ 3).

On May 10, 2017, Dye felt a headache developing while on duty at Glenwood. She informed her supervisor and other necessary personnel that she was ill and needed to leave work, and she followed the protocol necessary to obtain sick leave. After being relieved from duty, Dye took medication to enable her to drive home. (*Id.* ¶¶ 4-5).

On May 18, 2017, Dye was fired from her employment with Glenwood. (*Id.* ¶ 6). On October 24, 2017, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 10). She alleged that she discriminated against because of an actual or perceived disability, and that she was retaliated against for claiming that the termination was discriminatory. According to the EEOC charge, which Dye did not attach to her original petition, Glenwood discriminated against her because she took her medication as set out above and because "management wanted to terminate an employee because of a perceived disability." (EEOC Charge, [doc. # 15-1]). In the charge, Dye claimed she told representatives of Glenwood that she was being discriminated against because of a disability or a perceived disability. She also claimed that Glenwood personnel, in retaliation for her objection to the discriminatory treatment she was receiving, then falsely reported to the Louisiana State Board of Nursing (the "Board") that Dye had taken medication which would impair her ability to safely practice as a nurse while on duty. (*Id.*). The EEOC issued a right-to-sue letter on February 15, 2018. (Petition ¶ 10).

In her Petition, Dye claims she was fired because of her disability or perceived disability and request for a reasonable accommodation. (Petition ¶¶ 6-7). She also claims that after her termination, she made it clear to Glenwood representatives that she would be pursuing a

2

discrimination complaint. Subsequently, Glenwood made "unprivileged, false statements concerning her designed solely to intimidate her and prevent her from pursing [sic] her claims." (*Id.* ¶ 8).

On August 6, 2018, Glenwood filed the instant motion pursuant to Fed. R. Civ. P. 12(b)(6) to partially dismiss Dye's Petition for failure to state a claim upon which relief can be granted under the ADA or under La. Civ. Code art. 2315. [doc. # 9]. Dye filed a response on August 24, 2018. [doc. # 12]. Glenwood filed a reply on September 4, 2018.[1] [doc. # 15]. This matter is now before the court.

### Standard of Review

Federal Rule of Civil 12(b)(6) sanctions dismissal when a plaintiff fails "to state a claim upon which relief can be granted." A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully, *id.*; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Mere "labels and conclusions" or "a

---

[1] Glenwood filed a deficient reply on August 31, 2018 [doc. # 13], which it corrected within the time prescribed by the court. [*see* doc. # 14].

formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

In deciding a Rule 12(b)(6) motion to dismiss, a court may rely on the complaint, its attachments, and "documents incorporated into the complaint by reference." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Additionally, a court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *See Iqbal*, 556 U.S. at 678. A court may permit a well-pleaded complaint to proceed even when "actual proof of those facts is improbable" or recovery is unlikely. *Twombly*, 550 U.S. at 556. But a court will dismiss a complaint "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## Discussion

### I.  Defamation

Glenwood argues that Dye's defamation claim should be dismissed because Dye has (1) failed to articulate the alleged defamatory statement to comply with federal pleading standards and (2) failed to allege sufficient facts to demonstrate that the alleged defamatory statements were published or made with malice to plead a theory of defamation under Louisiana law. [doc. # 9]. Specifically, Glenwood claims Dye's "Petition contains only a vague, conclusory statement alleging that Plaintiff was defamed" and omits the nature of the statement, the speaker, and to whom the statement was made. [doc. # 9-1 at 4]. Further, Dye has failed to allege the defamatory statement was published to a third party or that Glenwood made any such statements with malice. (*Id.* at 5). Glenwood also argues that the failure to plead malice on the part of Glenwood implicates civil immunity pursuant to La. Stat. Ann. § 37:931. (*Id.* at 6).

Dye responds that discovery will establish another nurse at Glenwood was "an active

illegal or legal drug abuser" who was not reported to the Board, which demonstrates Glenwood misuses the reporting process "to obtain an advantage in Title VII litigation." [doc. # 12 at 3-4]. Dye claims that the trier of fact may infer from this evidence that malice was present or that the communication to the Board was not privileged. (*Id.* at 3). Dye claims "the assertion of malice need not be made," but asks the court leave to specifically allege malice if necessary. (*Id.* at 3-4).

Glenwood replies that Dye's response fails to allege facts to show fault under Louisiana law, does not set forth conduct that would constitute false light defamation or defamation per se, and does not allege malice. Thus, Dye's pleading cannot survive a Rule 12(b)(6) motion. [doc. # 15 at 2-3].

A. Law

"Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139. Under Louisiana law, there are four elements to a claim for defamation: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Id.* (citation omitted). If any of these elements are missing, plaintiff does not have a cause of action. *Id.* at 140. Further, employers may be vicariously liable for defamatory statements made by their employees in the course and scope of their employment. *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 681 n.12.

A statement can either be defamatory per se or susceptible of a defamatory meaning. *Costello*, 864 So. 2d at 140. A statement that by its very nature tends "to injure one's . . . professional reputation, even without considering extrinsic facts or surrounding circumstances, [is] considered defamatory per se. *Id.* When a plaintiff proves publication of a statement that is

5

defamatory per se, falsity, fault, and injury are presumed, but may be rebutted by the defendant. *Id.* "Publication refers to any nonprivileged communication of defamatory words." *Doe v. Grant*, 2001-0175 (La. App. 4 Cir. 1/29/03), 839 So. 2d 408, 416. However, communications between employees made within the course and scope of their employment are not considered published for purposes of a defamation claim. *Id.*; *see Ioppolo v. Rumana*, 581 F. App'x 321, 329-30 (5th Cir. 2014) (affirming dismissal of defamation claim because communications distributed within an organization did not constitute publication). When a statement is not defamatory per se, the plaintiff bears the burden of proving the additional elements. *Costello*, 864 So. 2d at 140.

In cases such as this one, involving a private individual, the fault or malice requirement "is a lack of reasonable belief in the truth of the statement giving rise to the defamation." *Id.* at 143. "Malice in this sense is more akin to negligence with respect to the truth than to spite or improper motive." *Id.*

Privilege, either absolute or qualified, is a defense to a defamation action. *Kennedy*, 935 So. 2d at 681. "The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory information to others without incurring liability." *Id.* An absolute privilege exists in limited circumstances, such as statements by a judge or legislator during judicial or legislative proceedings. *Id.* A qualified privilege exists in a wider range of circumstances. *Id.* Determining whether a qualified privilege exists is a two-step process: First, a court must determine whether "the attending circumstances of a communication occasion a qualified privilege." *Id.* at 682 (quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730, 745). Second, the trier of fact must determine "whether the privilege was abused" through malice or lack of good faith, unless there can be only one

conclusion drawn from the evidence. *Id.* (citing *Smith*, 639 So. 2d at 745).

Additionally, pertinent to this matter is La. Stat. Ann. § 37:931(A), which states:

> There shall be no civil liability and no licensee or other individual shall have a cause of action or a claim for damages against any person or institution providing information to the board, its members, officers, designated agents or representatives, employees, where the individual or institution acts without malice and in the reasonable belief that such information is accurate.

This statute provides qualified immunity to whomever provides information to the Louisiana State Board of Nursing, as long as they do so without malice and in good faith. *Lewis v. Morgan*, 2011-2182 (La. App. 1 Cir. 6/8/12), 93 So. 3d 741, 744; *see Smith*, 639 So. 2d at 749 (defining "good faith" as having a reasonable basis for the conduct).

B. Analysis

Because Dye did not attach the EEOC charge or right-to-sue letter to her Petition, the court does not consider them in determining whether Dye's pleadings are sufficient to survive a motion to dismiss. Turning to Dye's Petition, the only reference to a defamatory remark is that Glenwood "intentionally made unprivileged, false statements concerning her designed solely to intimidate her and prevent her from pursing [sic] her claims." (Petition ¶ 8). Dye merely suggests a false statement was made without including the actual statement. By not providing the false and defamatory statement in her Petition, Dye has failed to plead a cause of action for defamation under Louisiana law.

C. Amendment

Dye requests, in the alternative, leave to amend if her pleadings are deemed insufficient. Rule 15 provides that a party may amend its pleadings with the court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors

including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted). Leave to amend should not be granted if an amendment would be futile. *Id.* "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.* "[I]f the allegations are enough to raise a right to relief above the speculative level," amendment would not be futile and leave should be granted. *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 214 (5th Cir. 2017) (citations and internal quotations omitted); *see Twombly*, 550 U.S. at 555.

Glenwood included the EEOC charge as an attachment to its reply memorandum of law. [doc. # 15-1]. The court notes that the charge contains sufficient factual matter to state a claim for defamation under Louisiana law.[2] Thus, amendment would not be futile. Should Dye amend her Petition to replead the facts contained in the EEOC charge, the allegations would raise the right to relief above a speculative level and could survive a Rule 12(b)(6) motion.

Additionally, Dye does not appear to be motivated by bad faith, has not repeatedly failed to cure deficiencies in previous amendments, and is not unduly prejudicing Glenwood. In light of the policy of liberal amendment, leave to amend, if properly sought, i.e., with a proposed

---

[2] According to the EEOC charge, the alleged defamatory statement is that "[t]he hospital personnel, and particularly Patrick King, falsely reported to the Louisiana State Board of Nursing that [Dye] had taken a medication while on duty that would impair [her] ability to practice safely as a nurse." (EEOC Charge). Dye alleges this statement is false because she always followed her doctor's orders and advice with regards to managing her migraines, did not take her medication while on duty, and on May 10, 2017, took her medication only after being relieved by her supervisor. (Petition ¶¶ 3, 5). This statement qualifies as defamatory per se, for which falsity, fault, and injury are presumed, because it would injure Dye's professional reputation. *See Doe*, 839 So. 2d at 415-16 (statements from peers in an Ad Hoc Report and to a Medical Executive Committee regarding a doctor's standard of care were defamatory per se because they called into question his judgment and diminished his reputation as a doctor).

amended complaint attached, would be appropriate.

### D. Civil Immunity

In the interest of thoroughness, the court will also address Glenwood's argument that even if it made a false and defamatory statement about Dye, it is entitled to civil immunity under La. Stat. Ann. § 37:931. "State legislative enactments providing qualified immunity . . . resemble a special-interest, conditional privilege recognized in defamation actions." *Smith*, 639 So. 2d at 743 (noting the similarities between conditional privilege and a Louisiana statute that provides qualified immunity for peer review actions within the medical profession). Here, La. Stat. Ann. § 37:931 and conditional privilege can be analyzed in the same way because they both preclude liability unless the privilege was abused through malice or lack of good faith. *See id.* at 744 ("[T]he abuses that render the privilege inapplicable are the same as the statutory qualifications placed on the immunity provisions.").

"Louisiana courts have held that a qualified privilege is generally necessary for statements made when reviewing the fitness of medical doctors to practice their profession." *Ioppolo*, 581 F. App'x at 332. The instant case deals with another type of medical professional—a nurse, but likewise involves the fitness to take care of patients, which affects the public's interest in providing competent medical care. Further, in enacting La. Stat. Ann. § 37:931, the legislature found that nursing "is necessary to protect the public health, safety, and welfare" of Louisiana citizens and that the practice of nursing "should be regulated in the public interest." La. Stat. Ann. § 37:911. The intent and purpose of the statute is "to promote, preserve, and protect the public health, safety, and welfare by regulating" the practice of nursing. *Id.* A statement to the Board that a nurse is potentially impaired while on duty is exactly the type of

9

communication intended to be protected by privilege. *See Smith*, 639 So. 2d at 744 ("[I]f a conditional privilege should *ever* operate, indeed if there is one instance where society should encourage uninhibited communication, it is in the review of the competency of medical professionals." (citation omitted)). Therefore, Glenwood is immune from suit for defamation unless the statement was made with malice or lack of good faith.

Dye claims that one month after her dismissal, Glenwood made the defamatory statement in retaliation for her making it clear she would be pursuing a discrimination claim, and that the the statement was made solely to intimidate her and to prevent her from making a claim. (Petition ¶ 8). Glenwood's knowledge of the truth or falsity of its statement, any investigation it made prior to making the statement, and the reasonableness thereof, along with any other evidence that might impact Glenwood's intent, malice, good faith, or lack thereof is a question of fact for the jury. *See Kennedy*, 935 So. 2d at 682. At the pleading stage, Glenwood's asserted defenses do not preclude Dye's defamation claim. *Hoffman v. Bailey*, No. CV 13-5153, 2016 WL 409613, at *11 (E.D. La. Feb. 3, 2016) (citing *Kennedy*, 935 So. 2d at 682). Accordingly, Glenwood would not be entitled to civil immunity on Dye's defamation claim, if properly alleged in an amended complaint, at this time.

Accordingly, Plaintiff will be allowed to amend her complaint to properly allege defamation within the objection period for this report and recommendation. In the absence of Plaintiff's timely amendment, it is recommended that Defendant's motion to dismiss Plaintiff's defamation claim be **GRANTED**.

**II.     Failure to Accommodate**

Glenwood argues that Dye's failure to accommodate claim under the ADA should be dismissed because it exceeds the scope of Dye's EEOC charge, and that therefore Dye has failed

to exhaust her administrative remedies, and this claim is not properly before the court. [doc. # 9]. According to Glenwood, "the ADA permits a claimant to sue only upon the allegations that were presented to the EEOC" or that are "related to those allegations such that the claims would reasonably be expected to grow out of the charge." [doc. # 9-1 at 7]. Glenwood claims that in her EEOC charge, Dye alleged she was terminated because of a disability or perceived disability, but makes no reference to a failure to accommodate. (*Id.* at 7-8). However, in her Petition, ¶ 6, Dye alleges she could have fulfilled her duties as a nurse "by being granted a reasonable accommodation" and "was terminated unlawfully because of her disability and request for accommodation." [doc. # 9-1 at 8]. Glenwood claims the reasonable accommodation claim should be dismissed because it was not included in the EEOC charge and does not arise out of Dye's discrimination claims. (*Id.*).

Dye responds that the failure to accommodate is not a separate and distinct cause of action. Dye also argues that even if the failure to accommodate is a separate cause of action, it is evidence of an intent to discriminate and therefore admissible on her termination claim. Dye also requests leave to amend the pleadings if they are deemed insufficient. [doc. # 12 at 2-3].

In its reply, Glenwood reiterates that Dye has failed to exhaust her administrative remedies and argues that the failure to accommodate is a separate and distinct cause of action, and Dye cannot amend her pleadings to cure any defect. [doc. # 15 at 3-4].

    A. <u>Law</u>

The ADA incorporates Title VII's "powers, remedies, and procedures," including its administrative exhaustion requirements. 42 U.S.C. § 12117; *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 390 (5th Cir. 2005). Before a plaintiff brings a civil action under the ADA, she must exhaust her administrative remedies, which requires filing a charge of

discrimination with the EEOC and filing suit only after receiving a right-to-sue letter. *Henson*, 128 F. App'x at 390. "The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

A court should not condone a lawsuit that exceeds the scope of an EEOC charge because "doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *Id.* However, courts construe an EEOC complaint broadly albeit "in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." *Id.* (citation omitted). Although the EEOC charge must contain sufficient information to trigger an investigation, a plaintiff is not required to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006). Rather, the review involves "a 'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance." *McClain*, 519 F.3d at 273 (citation omitted). Thus, an ADA suit containing allegations not included in an EEOC charge will not be dismissed as long as the allegations are related to or growing out of the allegations contained in the EEOC charge. *See id.*

B. Analysis

Dye's failure to accommodate claim is related to and grows out of the allegations contained in the EEOC charge. While the charge makes no explicit mention of a failure to accommodate, it does contain sufficient information to trigger an EEOC investigation into this allegation. Looking at the substance of the charge, Dye's discrimination claim is that she was terminated due to a disability or perceived disability without a reasonable accommodation. Glenwood had notice of Dye's medical condition — Glenwood had required Dye to provide

documents from her doctors "based upon [her] perceived disability of migraine headaches." (EEOC Charge). Then in May 2017, Dye requested leave from work due to a migraine, and was relieved from duty. Shortly after this incident she was terminated. (*Id.*). Dye's allegation that she was terminated after she requested, and was granted, leave from work due to her medical condition is sufficient to provide the EEOC with notice that Glenwood failed to provide her with a reasonable accommodation for her disability. Thus, Dye has exhausted her failure to accommodate claim.

Accordingly, **IT IS RECOMMENDED** that Defendant's motion to dismiss Plaintiff's failure to accommodate claim be **DENIED**.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's motion to dismiss for failure to state a claim be **GRANTED IN PART** and **DENIED IN PART**.

Plaintiff is hereby **GRANTED** fourteen (14) days to amend her complaint to cure the deficiencies in her defamation claim. In the event that Plaintiff fails to file an amendment within that time, **IT IS RECOMMENDED** that Plaintiff's defamation claim against Defendant be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that in all other respects, Defendant's motion to dismiss be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 9th day of October 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE